1   **WO**

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8

9   Drunvalo Melchizedek, an individual,        )   No. CV 09-1815-PHX-JAT
                                                 )
10              Plaintiff,                        )
                                                 )   **ORDER**
11  vs.                                          )
                                                 )
12                                               )
    Ronald L. Holt and Lyssa Royal Holt, a)
13  married couple; and Flower of Life)
    Research, LLC, a Nevada corporation,        )
14                                               )
                Defendants.                      )
15                                               )
                                                 )
16  _____ )

17

18          Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 39),

19  and Plaintiff's Motion for Summary Judgment (Dkt. 41). The Court conducted oral argument

20  on May 31, 2011, and is now prepared to rule on the pending motions.

21                              **I.  BACKGROUND**

22          Plaintiff Drunvalo Melchizedek is an avid believer of a particular form of meditation

23  referred to as the Flower of Life. (Dkt. 41-1 at ¶ 2; Dkt. 55 at ¶ 2.) The Flower of Life is a

24  figure composed of multiple evenly-spaced overlapping circles that are arranged to form a

25  flower-like pattern with a six-fold symmetry like a hexagon with the center of each circle

26  located on the circumference of the surrounding circles of the same diameter. (Dkt. 41-1 at

27  ¶ 3; Dkt. 55 at ¶ 3.) The Flower of Life is believed by the parties to contain ancient religious

28  and scientific value by depicting the fundamental forms of all created matter known in the

universe.  (*Id.*)

Plaintiff is considered to be an expert in the Flower of Life.  (Dkt. 41-1 at ¶ 10; Dkt. 55 at ¶ 10), and has authored several books, teaching videos, and DVDs on the Flower of Life (Dkt. 41-1 at ¶ 4; Dkt. 55 at ¶ 4).  Since 1984, Plaintiff has presented lectures and workshops based upon his books and videos to tens of thousands of people worldwide.  (Dkt. 41-1 at ¶ 9; Dkt. 55 at ¶ 9.)

In 1992, due to the popularity of his workshops, Plaintiff released a video of one of his Flower of Life workshops, referred to herein as the "1992 Video."  (Dkt. 40 at ¶ 3; Dkt. 59 at ¶ 3.)  According to Plaintiff's introduction in the Ancient Secrets of the Flower of Life – Volume 1,

> By 1991 my workshops were filled and overflowing, with hundreds of people on the waiting list.  I didn't know how to reach everyone who wanted this information.  In fact, I could not.  So in 1992 I made a decision to release a video of one of my workshops and let it go out to the world.
> Within less than a year it was exploding in sales, but there was one big problem.  Most of the people who were watching the videos could not really understand what was presented because it was outside the context and content of their spiritual understanding. . . . Eight-five percent were confused and unclear about the instructions.
> Immediately I took the video tapes off the market.  This, however, did not stop the video from continuing to be sold.  People wanted the information, so they began to copy the existing tapes and give, sell or lease them to people worldwide.  By 1993, it has been estimated that there were approximately 100,000 sets of these tapes in the world.

(Dkt. 59-2, Ex. 2, Bates # DM00547.)

In 1993, Plaintiff decided to expand the number of lectures and workshop on the Flower of Life.  (Dkt. 41-1 at ¶ 11; Dkt. 55 at ¶ 11.)  To accomplish this expansion, Plaintiff established a group of people, referred to as "facilitators," to help spread his teachings.  (Dkt. 41-1 at ¶ 12; Dkt. 55 at ¶ 12.)  Plaintiff trained the facilitators to present a part of his Flower of Life workshop concerning an energy field meditation, which the parties refer to as the tetrahedronal Mer-Ka-Ba ("TMKB") meditation.  (Dkt. 41-1 at ¶ 13; Dkt. 55 at ¶ 13.)

Plaintiff recorded the Flower of Life workshop that was presented in Fairfield, Iowa in October 1993.  (Dkt. 40 at ¶ 5; Dkt. 59 at ¶ 5.)  The tapes are referred to by the parties in their briefs by a variety of names, including the "33 hour Iowa Tapes," "Flower of Life

tapes," and the "1993 Iowa videos."  This Order will refer to the recorded version of this Flower of Life workshop as the "1993 Videos."

At issue in this action are four works that were created in connection with the 1993 Videos.  Specifically:

1.  "The Ancient Secret of the Flower of Life – Volume 1," registered as TX 6-629-102;
2.  "The Ancient Secret of the Flower of Life – Volume 2," registered as TX 6-597-643;
3.  "Flower of Life Workbook Illustrations (Book #1 and Book #2)," registered as TX 6-597-658; and
4.  "Flower of Life Video Workshop: Volumes 1–33," registered as PA0001392809.

(*Id.*)  These four works, collectively referred to herein as the "Copyrighted Works," are all related.  The 33-hour long 1993 Videos became The Flower of Life Video Workshop: Volumes 1–33.  (*Id.*)  The photographs, designs and drawings that are in the Flower of Life Video Workshop: Volumes 1–33 are identical those in the Flower of Life Workbook Illustrations (Book #1 and Book #2).  (Dkt. 40 at ¶ 7; Dkt. 59 at ¶ 7.)  The Ancient Secret of the Flower of Life – Volumes 1 and 2 include the same photographs, designs and drawings as the Flower of Life Video Workshop: Volumes 1–33 and the Flower of Life Workbook Illustrations (Book #1 and Book #2) with added designs included in The Ancient Secret of the Flower of Life – Volumes 1 and 2.  (*Id.*)  Further, all of the slides seen in the Flower of Life Video Workshop: Volumes 1–33 are contained in The Ancient Secret of the Flower of Life – Volumes 1 and 2.  (Dkt. 40 at ¶ 8; Dkt. 59 at ¶ 8.)

The Clear Light Trust ("Clear Light") and Pure Heart Trust were assigned the rights to the Copyrighted Works.  (Dkt. 41-1 at ¶ 7; Dkt. 55 at ¶ 7.)  Flower of Life Research, Inc. was then granted the right to licence the Copyrighted Works.  (Dkt. 41-1 at ¶ 8; Dkt. 55 at ¶ 8.)  Flower of Life Research, Inc., was a non-profit corporation formed by Plaintiff in 1995 to ensure that Plaintiff's teachings would not be altered in any manner and to protect the facilitators using Plaintiff's materials.  (Dkt. 41-1 at ¶ 14; Dkt. 55 at ¶ 14.)  Through Flower of Life Research, Inc., Plaintiff granted copyright licenses to the facilitators, which permitted the facilitators to use the Flower of Life Video Workshop: Volumes 1–33, and to publicly

1    perform part of Plaintiff's lecture based on TMKB meditation. (Dkt. 41-1 at ¶ 16; Dkt. 55

2    at ¶ 16.) In 1993, Defendant Ronald Holt ("Holt") was one of the facilitators who received

3    a license from Plaintiff. (Dkt. 41-1 at ¶¶ 18–19; Dkt. 55 at ¶¶ 18–19.)

4        Holt worked as a facilitator until 1996 or 1997 when Plaintiff stepped down as

5    president of Flower of Life Research, Inc., and asked Holt to take over as president of the

6    corporation. (Dkt. 41-1 at ¶¶ 20–21; Dkt. 55 at ¶¶ 20–21.) In December 1998, Holt closed

7    Flower of Life Research, Inc., and formed Flower of Life Research, LLC ("FOLR"), a

8    Nevada limited liability company, and a defendant in this action. (Dkt. 41-1 at ¶¶ 22–23;

9    Dkt. 55 at ¶¶ 22–23.)

10        In 1999, Defendants were granted a license to use Plaintiff's materials for workshops.

11   (Dkt. 41-1 at ¶ 24; Dkt. 55 at ¶ 24.) The 1999 License and Agreement for Flower of Life

12   2000+ Workshop Material provided that "[i]f any new videos are to be made from this

13   material other than the FOLR 2000+ Workshop, approval must be in writing." (Dkt. 41-8,

14   Ex. F at ¶ 5.)

15        When the 1999 License and Agreement expired in 2001, FOLR was granted a new

16   license to continue using, nonexclusively, the Flower of Life Video Workshop: Volumes

17   1–33, and the shortened four-hour "Flower of Life 2000+ Workshop" video. (Dkt. 41-1 at

18   ¶ 27; Dkt. 55 at ¶ 27.) On December 4, 2001, Plaintiff, as managing director of Clear Light,

19   and FOLR entered into the Licensing Agreement. (Licensing Agreement, Dkt. 41-9, Ex. G.)

20   Pursuant to the Licensing Agreement, FOLR agreed to "acknowledge publicly and privately

21   that the original material of the Flower of Life 2000+ Workshop was sourced from

22   intellectual property of Clear Light" as presented by Plaintiff. (*Id.* at ¶ 4.) The Licensing

23   Agreement provided that "Clear Light will retain its copyrights to all of this intellectual

24   property including the Original Flower of Life Video Workshop (Iowa) (both in English and

25   Spanish) and the Flower of Life Workshop 2000+." (*Id.* at ¶ 5.) The Licensing Agreement

26   also provided that "[i]f any new videos are to be made from this material other than the

27   existing FOLR workshop 2000+, approval must be in writing from Clear Light." (*Id.*)

28        After entering into the Licensing Agreement, FOLR created a written work referred

to as the "Seed of Life Workshop Student Manual."  (Dkt. 41-1 at ¶¶ 30, 32; Dkt. 55 at ¶ 32.)
Defendants do not dispute that they used some of Plaintiff's old materials in the Seed of Life
Workshop Student Manual.  (Dkt. 41-1 at ¶ 32; Dkt. 55 at ¶ 32.)  However, Defendants
contend that Plaintiff gave Holt permission to use these materials.  (Dkt. 55 at ¶ 32.)
Plaintiff, instead, contends that he did not learn of the Seed of Life Workshop Student
Manual until 2008 when the parties were in litigation.  (Dkt. 41-1 at ¶ 31.)

In December 2002, Plaintiff sent a letter titled "A Sequel to the Open Letter" to "the
Facilitators, Graduates and Friends of the Flower of Life", in which Plaintiff wrote:

> Some people believe that I am protecting my copyrights and don't understand
> that there are more important issues than copyrights.  The most important issue
> is the proper transmission of the FOL [Flower of Life] material with integrity
> and responsibility to ensure that no one gets hurt by it or have it empower their
> ego and personal self-serving agendas, which we have seen happens all too
> often.
> . . . .
> So I had one of my workshops videoed and let the video go out to the world
> unrestrained.  No control on the copyrighted material.  No money coming back
> to me from the videos.  No control on the meditation believing that anyone
> who watched the videos (about 33 hours long) would be able to understand the
> Mer-Ka-Ba meditation and would no longer need me.
> . . . .
> Now as far as my "copyrighted material", this was necessary in order for a
> publisher to publish a book, which the angels had insisted that I do.  Publishers
> will not publish your work unless it is copyrighted so that *they* will not lose
> their money.  But at the same time, personally I have never cared about the
> copyrights.  I wanted the information to go out to the world.
>
> People have taken everything I have done in my life and even put it in their
> own books and sold it without giving me any compensation whatsoever.  But
> I have not tried to stop them.  The only part that I have stopped, or attempted
> to stop, is people teaching the Mer-Ka-Ba meditation itself because I have seen
> what happens when people are not trained and begin teaching.

(Dkt. 44-1, Ex. F, Bates # HOLTSL006327–29.)

In late 2005, after Plaintiff had created the Copyrighted Works, Plaintiff spoke to a
group of Russian facilitators in Bavaria, Germany.  (Dkt. 40 at ¶ 9; Dkt. 59 at ¶ 9.)  In his
remarks, Plaintiff stated: "I don't care about copyrights or any of that stuff, that doesn't
matter.  Forget it, just take it and you'll understand what this is all about by tomorrow." (*Id.*)
Plaintiff does not dispute this transcription of his remarks; rather, Plaintiff disputes that this
statement was in reference to the Copyrighted Works, as Defendants contend.  (Dkt. 59 at

¶ 9.)

In 2006, Defendants filed an action against Plaintiff for breach of the Licensing Agreement in the Superior Court of Gila County, Arizona, and Plaintiff filed a counterclaim against Defendants for breach of the Licensing Agreement.  (Dkt. 58-3, Ex. C.)

On or about June 29, 2007, Plaintiff registered the Copyrighted Works with the U.S. Copyright Office.  (Dkt. 41-4; Ex. B; Dkt. 41-1 at ¶ 5; Dkt. 55 at ¶ 5.)  These materials serve as the basis for Plaintiff's copyright infringement claim in this action.

On September 2, 2009, the parties entered into the Binding Arbitration Agreement, and agreed to dismiss the state court action with prejudice.  (Dkt. 64-1, Ex. A.)  In a handwritten and initialed provision, the Binding Arbitration Agreement provides: "It is understood and agreed that the arbitrator will not make a binding decision on the ownership of any copyrights of any materials.  However, he will decided the relative ownership rights and use of the materials between the parties."  (*Id.* at Recital B.)  After the parties submitted to binding arbitration, the arbitrator issued his award on September 3, 2009.  (Dkt. 58-5, Ex. E.)  The arbitrator found in favor of FOLR on the breach of contract claim and awarded $50,000 in damages.  (*Id.* at ¶ 2.)  With respect to Plaintiff's counterclaims, the arbitrator granted Plaintiff "a judicial declaration affirming that he is the owner of the materials which were the subject of the Revised Licensing Agreement dated December 7, 2001," but denied all further relief.  (*Id.* at ¶ 3.)

On August 31, 2009, Plaintiff initiated this action.  (Dkt. 1.)  Plaintiff alleges that Defendants infringed Plaintiff's copyrights in the Copyrighted Works (Count I), as well as breached the Licensing Agreement (Count II).  (Dkt. 15.)  The Court granted Defendants' motion to dismiss Count II of the First Amended Complaint on claim preclusion grounds, because the arbitrator's award constituted final judgment on the merits of parties' breach of contract claims.  (Dkt. 28.)  Therefore, the only remaining claim before the Court is Count I of the First Amended Complaint for copyright infringement.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, documents, affidavits, or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1).  Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the non-movant to establish the existence of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Id.* at 586–87 (quoting Fed.R.Civ.P. 56(e) (1963) (amended 2010)).

A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) ("A genuine issue of fact is one that could reasonably be resolved in favor of either party.").  The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 248.  However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison*, 357 F.3d at 1075.

When parties submit cross-motions for summary judgment on the same claim or issues, each motion must be considered on its own merits and analyzed under Rule 56. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.

1    2001).  The failure of one party to carry its burden does not automatically mean that the

2    opposing party has satisfied its burden.  It is certainly conceivable that both parties may have

3    failed to meet their burden of proving they are entitled to summary judgment, in which case

4    the Court properly denies both motions.

5                         **III.  COPYRIGHTS – GENERALLY**

6           Copyright protection exists "in original works of authorship fixed in any tangible

7    medium of expression, now known or later developed, from which they can be perceived,

8    reproduced, or otherwise communicated."  17 U.S.C. § 102(a).  Works of authorship include

9    literary works, pictorial, graphic and sculptural works, and motion pictures and other

10   audiovisual works.  *Id.*  "Copyright law only protects expression of ideas, not the ideas

11   themselves."  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002) (citing 17

12   U.S.C. § 102(b)).  The owner of a copyright has the exclusive right to reproduce the

13   copyrighted work, to prepare derivative works based on the copyrighted work, to distribute

14   copies of the copyrighted works, and to perform or display the copyrighted work publicly.

15   17 U.S.C. § 106.  However, a plaintiff cannot assert a civil action for infringement of a

16   copyright until the copyrighted work has been registered.  *Id.* § 411(a).

17          If ownership of a valid copyright is established, then to avoid summary judgment a

18   plaintiff asserting a claim for copyright infringement need only demonstrate a triable issue

19   of fact as to whether the defendant "copied anything that was original to their work."  *Funky*

20   *Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006)

21   (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  "'Original,'

22   as the term is used in copyright, means only that the work was independently created by the

23   author (as opposed to copied from other works), and that it possesses at least some minimal

24   degree of creativity."  *Feist*, 499 U.S. at 345 (citing 1 Melville Nimmer & David Nimmer*,*

25   *Copyright* § 2.01[A], [B] (1990)).  The requisite level of creativity is "extremely low; even

26   a slight amount will suffice.  The vast majority of works make the grade quite easily, as they

27   possess some creative spark, no matter how crude, humble or obvious it might be."  *Id.*

28   (quoting Nimmer, *supra*, § 108[C][1]).  So, while facts are not copyrightable, factual

1  compilations can be protected by copyright.  *Id.*  A work can be original "even though it
2  closely resembles other works so long as the similarity is fortuitous, not the result of
3  copying." *Id.*

## IV.  ANALYSIS

5  Here, both parties have moved for summary judgment.  Defendants move for
6  summary judgment in their favor on Plaintiff's copyright infringement claim.  (Dkt. 39 at p.
7  1.)  Whereas, Plaintiff moves for summary judgment adjudicating Defendants' liability on
8  the copyright infringement claim, and requests the Court conduct a hearing to determine the
9  extent of damages.  (Dkt. 41 at p. 15.)

10  Defendants argue that Plaintiff has expressly abandoned his copyrights in the
11  Copyrighted Works on three distinct occasions through overt acts indicating his intent to
12  abandon his copyrights.  (Dkt. 39 at p. 3.)  Plaintiff responds that Defendants have taken
13  Plaintiff's statements out of context, and regardless, the doctrine of res judicata and estoppel
14  prevent Defendants from raising the abandonment defense.  (Dkt. 58 at p. 3.)

15  Plaintiff moves for summary judgment on the grounds that Defendants have made
16  unauthorized copies of and distributed images from the Copyrighted Works that infringe
17  Plaintiff's copyrights under the Copyright Laws, 17 U.S.C. §§ 106 *et seq.*  (Dkt. 41 at p. 7.)
18  Defendants reassert their argument that Plaintiff cannot enforce his copyrights, because he
19  has abandoned them.  Defendants also respond that Plaintiff orally consented to Defendants'
20  use of Flower of Life workshop materials, and, regardless, Plaintiff's copyrights are invalid
21  because many components of the Copyrighted Works are not subject to copyright protection.
22  (Dkt. 54 at p. 1.)

23  The Court will address each of the parties' arguments and responses separately,
24  beginning with Defendants' Motion for Summary Judgment on the grounds of abandonment.

25  **A.     Defendants' Motion for Summary Judgment**

26  Defendants argue that Plaintiff abandoned his copyrights in the Copyrighted Works
27  through three overt acts, each indicating Plaintiff's intent to abandon his copyright
28  protection.  Plaintiff opposes the motion on two grounds: first, the statements that Defendants

1  rely on are taken out of context and do not support the abandonment defense; and second,

2  Defendants are barred from putting forth their abandonment defense, regardless of the effect

3  of Plaintiff's statements.

4      *1.    Abandonment Defense to Copyright Infringement*

5      Abandonment of copyright protection provides a defense to a claim of copyright

6  infringement. "In copyright, waiver or abandonment of copyright 'occurs only if there is an

7  intent by the copyright proprietor to surrender rights in his work.'" *A&M Records, Inc. v.*

8  *Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (quoting 4 Melville Nimmer & David

9  Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000)). Abandonment of a copyright "must be

10  manifested by some overt act indicative of a purpose to surrender the rights and allow the

11  public to copy." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960)

12  (finding evidence of an overt act lacking where there was no consent to public use and no

13  permission to sell the copyrighted works); *see McIntosh v. N. Cal. Universal Enter. Co.*, 670

14  F. Supp. 2d 1069, 1099 (E.D. Cal. 2009) (finding that submission of subdivision plans in

15  exchange for payment did not constitute an overt act of abandonment of copyright protection

16  in the plans). The Ninth Circuit has stated that a copyright owner can abandon some rights

17  without abandoning all rights. *Micro Star v. FormGen Inc.*, 154 F.3d 1107, 1114 (9th Cir.

18  1998) (finding that FormGen did not abandon all of its rights to profit commercially from its

19  computer game, even though it encouraged players to make and freely distribute their own

20  game levels). Based on the record before the Court, there is a material issue of fact as to

21  whether Plaintiff intended to abandon his copyright through an overt act or acts.

22      a.    Release of the 1992 Video

23      According to Defendants, Plaintiff has indicated his desire to abandon copyright

24  protection in the Copyrighted Works through three overt acts. As evidence of Plaintiff's first

25  overt act, Defendants cite to Plaintiff's statement in the Sequel to the Open Letter: "So I had

26  one of my workshops videoed and let the video go out to the world unrestrained. No control

27  on the copyrighted material. No money coming back to me from the videos." (Dkt. 44-1,

28  Ex. F.) Defendants acknowledge that the video that Plaintiff refers to in the statement above

1   is the 1992 Video.  Defendants argue that by letting the 1992 Video go out to the world

2   unrestrained and without any control on the copyrighted material, Plaintiff abandoned his

3   copyrights in the photographs, designs and drawings that are shown in the 1992 Video and

4   subsequently in the Copyrighted Works.  (Dkt. 39 at pp. 9–10.)

5       Plaintiff responds that the purported overt act cited by Defendants, the release of the

6   1992 Video, is irrelevant with respect to copyright protection in the Copyrighted Works,

7   because the 1993 Videos, on which the Copyrighted Works are based, were made after the

8   release and attempted retraction of the 1992 Video.  According to Plaintiff, the content of the

9   1993 Videos is substantially different than the 1992 Video, and Plaintiff did not make any

10  overt acts indicating an intent to abandon copyright protection in the 1993 Videos or the

11  Copyrighted Works.  (Dkt. 58 at pp. 14–15.)

12      An overt act indicating the abandonment of copyright protection in one work does not

13  automatically result in the abandonment of copyright protection in subsequent works.  *E.g.*,

14  *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1395 (C.D. Cal. 1990)

15  (finding that abandonment ended when the plaintiff changed the contents of the copyright

16  notice on his newsletters; yet, the revised notice did not avoid abandonment of the

17  newsletters distributed under the original notice).  The Court finds that the reference in the

18  Sequel to the Open Letter to the enforcement of Plaintiff's copyrights in the 1992 Video is

19  not bearing on the question of whether Plaintiff abandoned copyright protection in the

20  Copyrighted Works.  Consequently, the Court does not need to address whether Plaintiff did

21  in fact abandon copyright protection in the 1992 Video.  The Copyrighted Works were

22  created after Plaintiff purportedly took the 1992 Video off the market following an

23  unsuccessful public release.  (Dkt. 59-2, Ex. 2, Bates # DM00547.)  Plaintiff's copyrights in

24  the 1992 Video, the 1993 Videos and the Copyrighted Works extend to the original selection

25  and arrangement of each work's components.  *See Apple Computer, Inc. v. Microsoft Corp*,

26  35 F.3d 1435, 1445 (9th Cir. 1994) (citing *Feist*, 499 U.S. at 348–51).  At a minimum, the

27  original selection and arrangement of the materials in the Copyrighted Works are subject to

28  copyright protection distinct from copyright protection in the 1992 Video.

1    An overt act indicating an intent to abandon copyright protection in a work must be

2  taken with respect to that particular work.  Therefore, even if the same photographs, designs

3  and drawings appear in the 1992 Video and the Copyrighted Works, abandonment of

4  copyright protection in the 1992 Video does not automatically extend to the Copyrighted

5  Works.  Defendants have not offered any authority to the contrary.

6              b.    Sequel to the Open Letter

7    According to Defendants, the second overt act indicating Plaintiff's intent to abandon

8  his copyright protection in the Copyrighted Works is the publication of the Sequel to the

9  Open Letter.  (Dkt. 39 at p. 10.)  Defendants cite to the following paragraph in the Sequel to

10  the Open Letter:

11        Now as far as my "copyrighted material", this was necessary in order for a
          publisher to publish a book, which the angels had insisted that I do.  Publishers
12        will not publish your work unless it is copyrighted so that *they* will not lose
          their money.  But at the same time, personally I have never cared about the
13        copyrights.  I wanted the information to go out to the world.

14  (Dkt. 44-1, Ex. F, Bates # HOLTSL006329.)

15    Plaintiff argues that Defendants take this statement out of context.  According to

16  Plaintiff, the Sequel to the Open Letter explains that Plaintiff, at the time of releasing the

17  1992 Video, was more concerned about 1992 Video being accessible to the public, than

18  concerned about enforcement of his copyrights.  According to Plaintiff, after the 1992 Video

19  was not properly utilized, Plaintiff created the 1993 Videos and registered his copyrights in

20  the Copyrighted Works to protect the transmission of his teachings.  (Dkt. 58 at p. 15.)

21  Defendants note that the Sequel to the Open Letter was written after the Copyrighted Works

22  were created, and argue that the "copyrighted material" referred to in the letter includes the

23  Copyrighted Work.

24    The Court finds the interpretation and intent behind Plaintiff's statements in the

25  Sequel to the Open Letter is an issue of fact that could reasonably be resolved in favor of

26  either party.  A reasonable jury could determine that the paragraph quoted above merely

27  indicates that Plaintiff has copyrighted his published works at the behest of his publishers,

28  even though he did not personally care about copyrights.  This interpretation does not mean

1   that Plaintiff has abandoned copyright protection in the Copyrighted Works.  Alternatively,

2   a reasonable jury could instead determine that the "copyrighted material" refers to the

3   Copyrighted Works, and the issuance of the Sequel to the Open Letter is an overt act

4   indicating Plaintiff's intent to abandon copyright protection in the Copyrighted Works.

5   Consequently, the interpretation of and intent behind Plaintiff's copyright-related statements

6   in the Sequel to the Open Letter is open to reasonable interpretation.  There is a disputed

7   issue of material fact as to whether the Sequel to the Open Letter constitutes an overt act

8   indicating Plaintiff's intent to abandon copyright protection in the Copyrighted Works.

9              c.      2005 Remarks in Bavaria, Germany

10          Defendants assert that the third overt act indicating Plaintiff's to abandon copyright

11  protection in the Copyrighted Works occurred during his remarks at a 2005 Flower of Life

12  workshop in Bavaria, Germany.  (Dkt. 39 at p. 11.)  At the workshop, Plaintiff stated: "I

13  don't care about copyrights or any of that stuff, that doesn't matter.  Forget it, just take it and

14  you'll understand what this is all about by tomorrow."  (Dkt. 45-3, Ex. C at Time Stamp

15  30:06–22; Dkt. 53.)  Defendants argue that because Plaintiff had already created and

16  published the Copyrighted Works, this excerpt from Plaintiff's remarks ("just take it") clearly

17  refers to the Copyrighted Works and possibly other materials as well.

18          Plaintiff disagrees, and argues that this remark refers, not to the Copyrighted Works,

19  but to an unpublished book that Plaintiff was writing called *Tantra of the Heart*.  Plaintiff

20  contends that he was giving an oral license of a specific work to a specific group of people,

21  and that even though the earlier discussion of the new book was not on the tape of the

22  workshop, the remark nevertheless referred to the new book.  (Dkt. 58 at p. 16.)

23          The Court finds that the interpretation and intent behind Plaintiff's statement at the

24  Flower of Life workshop raises an issue of fact for the jury to decide.  As Plaintiff points out,

25  the remark quoted above does not specify which copyrighted work or works that Plaintiff is

26  discussing with his audience.  The jury could reasonably interpret Plaintiff's remarks to

27  constitute an overt act indicative of his intent to abandon his copyright protection in the

28  Copyrighted Works.  Or, the jury could also reasonably determine that Plaintiff's remarks

are insufficient to constitute overt acts, or do not even refer to the Copyrighted Work, but rather to *Tantra of the Heart*.  Contrary to Defendants' assertions, the Court does not find it clear that Plaintiff was referring to the Copyrighted Works.  Further, even if he was referring to the Copyrighted Works, it is a disputed question of fact as to whether Plaintiff's intent was to abandon his copyright protection in these works.

Based on the foregoing, the Court finds that questions of fact exist as to whether the overt acts propounded by Defendants are indicative of Plaintiff's intent to abandon copyright protection in the Copyrighted Works.

    2.    *Res Judicata Effect of Arbitrator's Award*

Plaintiff argues that the doctrine of res judicata precludes Defendants from raising the abandonment defense in this action, because "the state court ruled" that Plaintiff was the valid owner of his copyrights, despite Defendants' claim in the state court action that Plaintiff had abandoned his copyrights to the public.  (Dkt. 58 at pp. 4–5.)  Defendants respond that the doctrine of res judicata does not apply, because the parties agreed that the arbitrator would not make a decision with respect to the ownership of any copyrights.  (Dkt. 63 at p. 3.)  Defendants also cite to correspondence between the parties' counsel indicating that the copyright issues would be reserved for this action.  (*Id.* at p. 5.)

As the Court noted in the Order granting Defendants' motion to dismiss Plaintiff's breach of contract claim (Dkt. 28 at p. 3), "[u]nder the doctrine of claim preclusion, a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same claim."  *Dressler v. Morrison*, 130 P.3d 978, 981 (Ariz. 2006).[1] Hence, in order for claim preclusion to apply, there must be: (1) a final judgment on the merits; (2) common identity of parties; (3) common subject matter; and (4) a common cause

---

[1]  Congress, through the Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to give the same preclusive effect to a state court judgment as a court within that state would give.  *Int'l Evangelical Church of the Soldiers of the Cross of Christ v. Church of the Soldiers of Christ of the State of Cal.,* 54 F.3d 587, 590 (9th Cir. 1995).  In this instance, the Court must look to Arizona law to determine whether the abandonment defense is precluded by the judgment in the state court action.

of action. *Matusik v. Ariz. Pub. Serv. Co.*, 684 P.2d 882, 884 (Ariz. App. 1984) (quoting *El Paso Natural Gas Co. v. State*, 599 P.2d 175, 178 (Ariz. 1979)).  Claim preclusion binds the parties in subsequent litigation to "every issue decided in the prior action as well as on every issue that could have been decided." *Norriega v. Machado,* 878 P.2d 1386, 1389 (Ariz. App. 1994).

In order for claim preclusion to apply to Defendants' abandonment defense, there must have been a final judgment on the merits and a common cause of action.  As noted above, the 2006 state court action was dismissed with prejudice, and the parties agreed to submit their dispute to binding arbitration.  The arbitrator's award was entered as final judgment in the state court action.  Plaintiff did not assert a copyright infringement counterclaim in the state court action, and the arbitrator did not make any determinations with respect to copyright infringement claims.  In fact, the parties agreed in the Binding Arbitration Agreement that "the arbitrator will not make a binding decision on the ownership of any copyrights of any materials." (Dkt. 64-1, Ex. A at Recital B.)  In accordance with the parties' agreement, the arbitrator did not make any findings with respect to Plaintiff's copyrights.

The arbitrator did, however, find that Plaintiff was "the owner of the materials which were the subject of the Revised Licensing Agreement dated December 7, 2001." (Dkt. 58-5, Ex. E at ¶ 3.)  Plaintiff appears to conflate this finding with a finding regarding Plaintiff's copyrights.  Even though the parties agreed that the arbitrator would not decide the ownership of any copyrights, the arbitrator could decide "the relative ownership rights and use of the materials between the parties." (Dkt. 64-1, Ex. A at Recital B.)  Through the Binding Arbitration Agreement, the parties clearly distinguished between findings of copyright ownership and findings of "the materials" ownership. Accordingly, the arbitrator's award is in reference only to the materials themselves, and not to the copyrights of such materials.

Based on the foregoing, the Court finds Defendants are not precluded under the doctrine of res judicata from asserting the abandonment defense in this action, because the

1   parties agreed that issue of copyright infringement was not before the arbitrator.

2       *3.      Law of the Case Doctrine*

3       Plaintiff briefly argues that the law of the case doctrine requires the Court to continue

4   to decide the same issues in all stages of the case in the same manner.  The law of the case

5   doctrine "posits that when a court decides upon a rule of law, that decision should continue

6   to govern the same issues in subsequent stages in the same case." *Pepper v. United States*,

7   __ U.S. __, 131 S. Ct. 1229, 1251 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618

8   (1983)).  Plaintiff refers to the May 19, 2010 Order dismissing Plaintiff's breach of contract

9   claim on claim preclusion grounds, wherein the Court stated, "claim preclusion applies to

10  every issue that could have been decided."  (Dkt. 28 at p. 6) (citing *Norriega*, 878 P.2d at

11  1389).

12      Plaintiff's copyright infringement claim was not submitted to the arbitrator.

13  Therefore, the Court is not disregarding the rule of law pronounced in its prior order by

14  concluding that Defendants are not precluded from raising the abandonment defense.  By the

15  parties' express agreement, the arbitrator was not to make any determinations concerning

16  Plaintiff's ownership of the copyrights.  (Dkt. 64-1, Ex. A at Recital B.)  Claim preclusion

17  does not apply to the abandonment defense, because it is an issue that was not before the

18  arbitrator.  Claim preclusion did apply to Plaintiff's breach of contract claim, because it was

19  submitted to and decided on by the arbitrator.  The Court is not applying a different standard

20  of claim preclusion or disregarding its prior statements of law, and the Court is not in

21  violation of the law of the case doctrine.

22      *4.      Estoppel Doctrines*

23      Plaintiff argues that, under the doctrine of quasi estoppel, Defendants should be

24  prohibited from arguing that Plaintiff abandoned copyright protection in the Copyrighted

25  Works.  (Dkt. 58 at p. 7.)  Defendants respond that the estoppel argument set forth by

26  Plaintiff is more akin to licensee estoppel, which was rejected in *Lear, Inc. v. Adkins*, 395

27  U.S. 653 (1969).  (Dkt. 63 at p. 7.)

28      The doctrine of quasi estoppel is based on election or acceptance of benefits.  *Sailes*

1  *v. Jones*, 499 P.2d 721, 725 (Ariz. App. 1972) (citing *Godoy v. County of Haw.*, 354 P.2d 78

2  (Haw. 1960)).  "Quasi estoppel differs from other forms of estoppel in that it appeals to the

3  conscience of the court to prevent injustice by precluding a party from asserting a right

4  inconsistent with a position previously taken by him, and does not require ignorance or

5  reliance as essential elements." *Donaldson v. LeNore*, 540 P.2d 671, 674 (Ariz. 1975); *see*

6  *also Sailes*, 499 P.2d at 725 ("The doctrine precludes a party from asserting a claim

7  inconsistent with a position previously taken by him, where it would be unconscionable to

8  permit a person to maintain a position inconsistent with one in which he acquiesced or one

9  in which he accepted a benefit." (internal citations omitted)).

10       In *Lear*, the Supreme Court rejected the doctrine of licensee estoppel,[2] and held that

11  the licensee of a patent must be permitted to avoid the payment of all royalties accruing after

12  the licensor/inventor's patent is issued, if the licensee can prove the patent is invalid.  395

13  U.S. at 674.  The Supreme Court concluded that "the technical requirements of contract

14  doctrine must give way before the demands of the public interest in the typical situation

15  involving the negotiation of a license after a patent has issued." *Id.* at 670–71 (stating that

16  licensees may often be the only individual with enough economic incentive to challenge the

17  patentability of an inventor's discovery).  The Court's rejection of licensee estoppel relies

18  on the public's interest in eliminating specious patents. *Id.* at 674 n.19.

19       According to Plaintiff, Defendants have admitted on at least three occasions, February

20  2001, December 2002 and December 2005, that Defendants thought Plaintiff possibly

21  abandoned his copyrights; nevertheless, Defendants still entered into the Licensing

22  Agreement in December 2001, and received substantial monetary benefits under the license.

23  Plaintiff further contends that Defendants did not inform Plaintiff of Defendants'

24  abandonment belief until 2006, in response to Plaintiff's threat to terminate the Licensing

25  Agreement.  Plaintiff argues that quasi estoppel precludes Defendants from now arguing that

26

27       [2]  The doctrine of licensee estoppel provided that a licensee under a patent license
agreement may not challenge the validity of the patent in a suit for royalties. *Automatic*
28  *Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 836 (1950).

1   Plaintiff abandoned his copyrights, because Defendants are taking a position that is entirely
2   inconsistent with the copyright license's purpose.  Plaintiff also argues that Defendants are
3   estopped from taking a position that is contrary to Defendants' prior lawsuit against Plaintiff
4   for breach of the Licensing Agreement.

5          The Court does not find quasi estoppel applies in this action.  Under the doctrine of
6   quasi estoppel, the Court acts in equity to prevent an injustice by precluding a party from
7   asserting a right inconsistent with a position previously taken.  The Court does not find
8   Defendants' abandonment defense to be "unconscionable" or "repulsive" as the doctrine of
9   quasi estoppel requires.  *Sailes*, 499 P.2d at 725.  The Court will not apply the quasi estoppel
10  doctrine where the purported unconscionable conduct and injustice is the result of a party's
11  *belief* that something *might* not be as contracted for, and election to enter into the contract
12  notwithstanding the risk.[3]  *Id.* (stating that a court applies quasi estoppel when "the
13  conscience of the court is repelled by the assertion of rights inconsistent with a litigant's past
14  conduct").  Both parties profited from the Licensing Agreement — Defendants profited from
15  their use and distribution of the Copyrighted Works and Plaintiff received royalties from
16  funds collected by Defendants — and Defendants do not seek to recover the royalties
17  previously paid to Plaintiff.  Further, Defendants argue that the association with Plaintiff (and
18  resulting legitimation of the Flower of Life offerings) was a benefit of the Licensing
19  Agreement that a person simply reproducing works in the public domain could not have.
20  Therefore, the Court does not find Defendants' abandonment defense unconscionable,
21  because the Licensing Agreement is valuable to Defendants even if the copyrights were
22  abandoned.

23         Defendants acknowledge that the holding in *Lear* is not binding in a copyright
24  infringement suit; however, Defendants point out that the facts and issues in *Lear* are more
25  closely related to this action, than the facts and issues in the quasi estoppel cases cited by

26

---

27         [3] Plaintiff argues, "FOLR admits that although it knew nearly a year before it signed
28  the license agreement that Melchizedek had possibly abandoned his copyrights, it entered
    into the agreement anyway."  (Dkt. 58 at p. 13.)

Plaintiff.  (Dkt. 63 at p. 8.)  Although *Lear* arises in the context of patent validity and enforcement, a strong analogy can be drawn to this action.  Consistent with the Supreme Court's economic incentive rationale for permitting licensee challenges of patent validity, public policy favors granting Defendants the opportunity to challenge the validity and enforceability of Plaintiff's copyrights when the public may not have an economic incentive to take up the legal challenge.

Finally, because the estoppel defense does not apply, it is not necessary to examine the factual underpinnings of Plaintiff's estoppel argument.  The Court, however, finds that Plaintiff's claim that Holt admitted Plaintiff's copyrights are valid is inaccurate and misleading.  (Dkt. 58 at pp. 11–12.)  The excerpt of the deposition set forth in Plaintiff's response does not contain the admission Plaintiff states it contains.  In the deposition excerpt, Holt states he has "no reason to doubt" "whether or not" Plaintiff owns the copyright registrations, and "no reason to doubt" "whether or not" the registrations are valid.  (*Id.*) Holt's responses are inconclusive, and do not refer to the Copyrighted Works themselves, but rather to the registration papers in front of Holt during the deposition.  (Dkt. 63 at p. 10.)

**B.      Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on the grounds that Defendants infringed Plaintiff's copyrights in the Copyrighted Works by making unauthorized copies of and distributing images from the Copyrighted Works.  Plaintiff argues that he has established all of the elements of his copyright infringement claim, and that summary judgment is appropriate. (Dkt. # 41 at pp. 7, 14.)  Defendants respond that Plaintiff's copyrights cannot be enforced, because he has abandoned copyright protection, Plaintiff consented to Defendants' use of Flower of Life workshop materials, and many of Plaintiff's images and figures are not copyrightable.  The Court will address the elements of Plaintiff's copyright infringement claim and Defendants' opposition separately.

          *1.      Prima Facie Copyright Infringement Claim*

In order to establish a prima-facie case of copyright infringement, Plaintiff must prove (1) that Plaintiff owns the Copyrighted Works, and (2) that Defendants copied it. *Feist*, 499

1  U.S. at 361 ("To establish infringement, two elements must be proven: (1) ownership of a

2  valid copyright, and (2) copying of constituent elements of the work that are original.").

3  Rarely is there any direct evidence of copying. *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d

4  204, 206 (9th Cir. 1988). "Absent direct evidence of copying, proof of infringement involves

5  fact-based showings that the defendant had 'access' to the plaintiff's work and that the two

6  works are 'substantially similar.'" *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th

7  Cir. 2000); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

8         With respect to the first element of a prima facie case for copyright infringement,

9  Defendants appear to concede that Plaintiff is the author of the Copyrighted Works and the

10  registered owner of the Copyrighted Works.[4]  As to the second element, Plaintiff argues that

11  there can be no material factual dispute that Defendants copied the protected expression in

12  the Copyrighted Works in violation of the Copyright Laws.  Defendants do not contest that

13  they had access to the Copyrighted Works,[5] and that substantial similarity exists between the

14  Copyrighted Works and the Seed of Life workshop.[6]  Defendants instead argue, in the

15  alternative, that (1) Plaintiff abandoned his copyright protection making his copyrights

16  unenforceable, (2) Plaintiff consented to the allegedly infringing use of the Copyrighted

17  Works, and (3) Plaintiff's copyrights are invalid due to their allegedly uncopyrightable

18  components.  (Dkt. 54 at p. 1.)  The Court will address each of these defenses in the order

19

20         [4]   Each of Plaintiff's copyright registration certificates "constitute prima facie
21  evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C.
    § 410(c); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000) (stating that
22  under the copyright laws, a certificate of registration from the U.S. Copyright Office entitles
    a plaintiff "to a rebuttable presumption of originality" with respect to the work at issue.).
23  Defendants do not contest the validity of the copyright registration certificates.

24         [5]  "The term 'access' is defined as 'an opportunity to view or copy plaintiff's work.'"
25  *Seals-McClellan v. Dreamworks, Inc.*, 120 Fed. App'x 3, 4 (9th Cir. 2004) (quoting *Three
    Boys Music*, 212 F.3d at 482).
26

27         [6]  Defendants allege that Holt visited Plaintiff to show "Mr. Melchizedek the Seed of
    Life Workshop Student Manual and to get his approval on the use of some of Mr.
28  Melchizedek's drawings in it."  (Dkt. 54 at p. 6.)

1    raised by Defendants.

2         *2.    Abandonment Defense*

3         In Defendants' response to Plaintiff's Motion for Summary Judgment, Defendants

4    reassert the abandonment defense, and argue that Plaintiff has abandoned any rights gained

5    under the Copyright Laws, 17 U.S.C. §§ 106 *et seq.*, through three separate overt acts, each

6    indicating an intent to abandon copyright protection in the Copyrighted Works. *See Micro*

7    *Star*, 154 F.3d at 1114 ("It is well settled that rights gained under the Copyright Laws may

8    be abandoned.").  In his reply, Plaintiff reasserts his arguments that Plaintiff did not take any

9    overt acts indicating an intent to abandon copyright protection in the Copyrighted Works, and

10   that regardless of any acts, Defendants are barred from asserting the abandonment defense.

11   Both parties incorporate the arguments set forth in the briefings filed in connection with

12   Defendants' Motion for Summary Judgment.  (Dkt. 54 at p. 8 n.1; Dkt. 65 at p. 2.)

13        For the reasons set forth in Section IV.A of this Order, the Court finds that there are

14   material issues of fact in dispute as to whether Plaintiff abandoned copyright protection in

15   the Copyrighted Works.  Denial of both Plaintiff's Motion for Summary Judgment and

16   Defendants' Motion for Summary Judgment is necessary to resolve these disputed issues of

17   fact.

18        *3.    Consent to the Seed of Life Workshop*

19        Defendants argue that Plaintiff's claim of copyright infringement is barred, because

20   Plaintiff orally consented to Defendants' use of the allegedly infringing materials, including

21   the Seed of Life Workshop Student Manual.  (Dkt. 54 at p. 11.)  The consent of a copyright

22   holder prevents a work from being an infringing work. *United States v. Taxe*, 540 F.2d 961,

23   965 n.2 (9th Cir. 1976) ("[A work] is saved from being an infringing work only because the

24   borrowed or copied material was taken with the consent of the copyright owner of the prior

25   work, or because the prior work has entered the public domain.").  Plaintiff replies that the

26   factual basis for Defendants' claim of consent is false, and, regardless, the agreements

27   entered into by the parties required Defendants to obtain written permission from Plaintiff

28   to create derivative works.  (Dkt. 65 at p. 2.)

1    According to Defendants, in the summer of 2000, Holt and Holt's assistant, William

2    Saldausky, visited Plaintiff's home in Payson, Arizona in order to show Plaintiff the Seed of

3    Life Workshop Student Manual and to obtain Plaintiff's permission to use some of his

4    drawings in this manual.   Defendants contend (and offer affidavits to support their

5    contention) that Plaintiff reviewed this manual and gave his approval.  (Dkt. 54 at p. 12.)

6    Plaintiff disputes Defendants' "self-serving testimony" regarding Plaintiff's alleged consent

7    of the Seed of Life Workshop Student Manual, and claims that the testimony is

8    "unequivocally false."   According to Plaintiff, not only has Mr. Saldausky never entered

9    Plaintiff's home, Plaintiff met him for the first time at Mr. Saldausky's deposition in 2010.

10    Plaintiff also distinguishes between the Seed of Life Workshop, which Plaintiff knew

11    Defendants were preparing, and the Seed of Life Workshop Student Manual, which Plaintiff

12    claims violates his copyrights in the Copyrighted Works.  (Dkt. 65 at p. 2–5.)

13    Clearly, there is a material dispute of fact between the parties.  Defendants claim a

14    meeting took place and consent was given, and Plaintiff denies the same.  The veracity of the

15    testimony of Plaintiff, Plaintiff's wife, Holt, and Mr. Saldausky is disputed by the parties.

16    In support of Plaintiff's denial of Defendants' factual claims, Plaintiff points to the Licensing

17    Agreement, as evidence that Plaintiff has "vigorously protected, licensed and enforced his

18    rights."  (Dkt. 65 at p. 3.)  Because these facts are genuinely disputed, the Court cannot

19    determine as a matter of law whether Plaintiff gave his consent to the creation of the Seed

20    of Life Workshop Student Manual.

21    Plaintiff also claims that the 1999 License and Agreement required Plaintiff's written

22    approval.  However, this contention overstates the actual terms of the parties' agreement.

23    The 1999 License and Agreement, as well as the 2001 Licensing Agreement, requires written

24    approval from Plaintiff for the creation of any new *videos* made from Plaintiff's materials

25    (other than the existing Flower of Life 2000+ Workshop video).  (Dkt. 41-8, Ex. F at ¶ 5;

26    Dkt. 41-9, Ex. G at ¶ 5.)  The allegedly infringing materials are not videos, and written

27    permission was not required "to make *any* derivative works", contrary to Plaintiff's

28    contention (Dkt. 65 at p. 2) (emphasis added).  Therefore, if the jury finds that Plaintiff orally

1  consented to the creation of the Seed of Life Workshop Student Manual, then a lack of
2  written permission is not a prohibition to Defendants' consent defense.

3      Because there is a material factual dispute between the parties as to whether Plaintiff
4  orally consented to Defendants's creation of the allegedly infringing works, the Court finds
5  this issue must be resolved by the jury.

6      *4.      Validity of Copyrights*

7      Defendants's final argument in response to Plaintiff's Motion for Summary Judgment
8  is that Plaintiff's copyrights are invalid for two reasons related to uncopyrightable content.
9  First, Defendants contend that many of the materials in the Copyrighted Works are not
10 copyrightable subject matter, and second, Defendants contend that Plaintiff is not the actual
11 author of several of the graphics.  (Dkt. 54 at p. 13.)  In its reply, Plaintiff also argues that
12 Defendants falsely state the issue of whether Plaintiff's works are worthy of copyright
13 protection.  (Dkt. 65 at p.5.)

14      1.      Copyrightable Subject Matter

15     Defendants argue that Plaintiff's copyright infringement claim is barred, because
16 ideas, methods, names, short phrases and shapes cannot be copyrighted.  According to the
17 Copyright Laws, copyright protection for an original work of authorship does not extend "to
18 any idea, procedure, process, system, method of operation, concept, principle, or discovery,
19 regardless of the form."  17 U.S.C. § 102(b).  Based on this limitation on the scope of
20 copyrights, Defendants argue that Plaintiff does not, and cannot, have copyrights in the
21 TMKB meditation method, the use of sacred geometry to described the meditation method,
22 or the phrases "Fruit of Life," "Seed of Life," "Egg of Life" or "Metatron's Cube." (Dkt. 54
23 at p. 14.)

24     Plaintiff responds by arguing that he has not alleged owning a copyright in names or
25 phrases, and he has not alleged independent claims for copyright infringement for
26 Defendants' copying of each individual element of Plaintiff's work.  In his reply, Plaintiff
27 states that his copyright infringement claim is based on his allegations that Defendants
28 impermissibly distributed or copied Plaintiff's original writings and Plaintiff's original

selection, arrangement or interpretation of preexisting elements.  (Dkt. 65 at p. 5.)  Plaintiff is not claiming exclusive rights to the TMKB meditation method, the use of sacred geometry, or the phrases "Fruit of Life," "Seed of Life," "Egg of Life" or "Metatron's Cube", and Plaintiff does not deny that there are elements of the Copyrighted Works that are not protected by copyright.[7]

### 2.    Authorship of Copyrighted Works

Defendants also argue that Plaintiff claims to have copyrights in graphics in the Copyrighted Works that were not created by Plaintiff.  Defendants refer to the Flower of Life image and the "Metatron's Cube" figure as examples of graphics that are not original to Plaintiff. (Dkt. 54 at p. 17.)  In his reply, Plaintiff does not deny that there are graphics in the Copyrighted Works that were not created by him.  However, Plaintiff again argues that he "has not alleged independent claims for copyright infringement for FOLR's copying of each *individual element* of his work."  (Dkt. 65 at p. 6.)  As described more thoroughly above, according to Plaintiff, his claim for copyright infringement concerns Defendants' alleged copying and distribution of Plaintiff's "original writings and his original selection, arrangement, or interpretation of preexisting elements."  (*Id.*)

### 3.    Copyright Protection in Original Components

Both of Defendants' arguments concern uncopyrightable components of the Copyrighted Works.  Plaintiff has argued that regardless of any uncopyrightable components, whether due to subject matter or authorship, Plaintiff can still enforce his copyrights in the Copyrighted Works.  The Court agrees with Plaintiff and finds that Defendants' arguments are not a complete bar to Plaintiff's infringement claim.

The Supreme Court has stated that even if a work is copyrighted, copyright protection may not extend to every element of the work.  *Feist*, 499 U.S. at 348.  A copyright does not cover the facts and ideas included in a work.  *Id.*  It is the author's organization and

---

[7]    According to Plaintiff, "[s]everal of Melchizedek's works consist of original drawings, writings, and derivative works inspired by selected preexisting works."  (Dkt. 65 at p. 7.)

1    expression of the facts or ideas contained in the work that enjoys copyright protection.  *Id.*;

2    *Allen v. Academic Games League of Am.*, 89 F.3d 614, 617 (9th Cir. 1996).  "Thus, ideas

3    contained in a copyrighted work may be freely used so long as the copyrighted expression

4    is not wholly appropriated."  *Allen*, 89 F.3d at 617; see also *Roth Greeting Cards v. United*

5    *Cards Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970) (holding that each of plaintiff's greeting

6    cards, considered as a whole, represented a tangible expression of an idea that was, in

7    totality, created by plaintiff and copyrightable, even though the textual matter of each card,

8    considered apart from its arrangement and artistic representations, was not original to

9    plaintiff).

10       Defendants do not argue that there are no original elements in Plaintiff's work; rather,

11   Defendants point to specific elements and images that are uncopyrightable, and argue that

12   Plaintiff's claim is barred.   Regardless of any uncopyrightable components in the

13   Copyrighted Works, Plaintiff is permitted to go forward with his claim that Defendants

14   distributed and/or copied those portions of the Copyrighted Works that are subject to

15   copyright protection, including original writings and the original selection and arrangement

16   of uncopyrightable components.

17       Accordingly, Plaintiff may continue to assert his claim for copyright infringement.

18   However, to the extent that there are ideas, concepts and discoveries embodied in the

19   Copyrighted Works, as well as graphics found in the public domain, these elements are not

20   subject to copyright protection.  17 U.S.C. § 102(b).

21                          **V. CONCLUSION**

22       The Court finds that there are original elements in the Copyrighted Works that are

23   subject to copyright protection.  However, there are disputed issues of material fact as to

24   whether Plaintiff is barred from maintaining his copyright infringement claim.  Therefore,

25   the Court will deny the parties' motions.  Defendants' Motion for Summary Judgment is

26   denied, because factual issues remain as to whether Plaintiff abandoned his copyright

27   protection in the Copyrighted Works.  Defendants are not prohibited from asserting the

28   abandonment defense on estoppel principles or res judicata grounds.  Plaintiff's Motion for

Summary Judgment is denied, because, due to material factual disputes, the Court cannot conclude that as a matter of law Defendants' infringed on Plaintiff's copyrights in the Copyrighted Works.  Defendants may assert the defenses of abandonment and consent, and it is for the jury to decide whether Defendants have infringed Plaintiff's copyrights in the Copyrighted Works or whether Plaintiff is prohibited from asserting his claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 39) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 41) is **DENIED**.

**IT IS FINALLY ORDERED** that this matter is set for trial on Tuesday, September 20, 2011 at 9:00 a.m.

DATED this 3rd day of June, 2011.

_____
James A. Teilborg
United States District Judge